U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JAN - 4 2017

TONY R. MOORE, CLERK
BY: _____ MB
DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

BRIAN JAMES LAWSON                      CIVIL ACTION NO. 1:16-0238

VERSUS                                  JUDGE JAMES T. TRIMBLE, JR.

CERTAINTEED CORP., ET AL                MAG. JUDGE PEREZ-MONTES

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

### MEMORANDUM RULING

Before the court is "Defendant's Rule 12(b)(6) Motion for Partial Dismissal" (R. #11) wherein defendant, CertainTeed Corporation ("CertainTeed") seeks to dismiss plaintiff, Brian Lawson's claims of discrimination and retaliation under the American with Disabilities Act ("ADA"). CertainTeed maintains that Mr. Lawson has failed to plead facts to state a claim for relief under the ADA. Also before the court is a motion for oral arguments (R. #16) which will be denied as unnecessary.

### FACTUAL ALLEGATIONS

Mr. Lawson was employed as a Quality Control Manager for CertainTeed from approximately March 2011 until February 11, 2014. On March 17, 2014, Mr. Lawson filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging his employment was terminated and CertainTeed failed to accommodate his alleged disability in violation of the ADA.

In his complaint, Mr. Lawson names as defendants, CertainTeed, its Human Resources Supervisor, Ellen Curtis, and Plant Manager, Troy Fronzaglio for violations of the FMLA.[1] Mr. Lawson complains that CertainTeed failed to give him notice of his rights under the FMLA, improperly denied his request for FMLA leave, and retaliated against him for filing a FMLA claim.[2] Mr. Lawson alleges that CertainTeed fired him shortly after filing his FMLA claim under the pretext of being repeatedly tardy and/or absent from work.

Plaintiff alleges that many of his absences from work were due to his son's numerous appointments for ADHD and Cerebral Palsy evaluations as well as school suspensions and meetings with the kindergarten school principal and staff.[3] Mr. Lawson alleges he was absent for three weeks in November 2013 due to hernia repair surgery.[4]

Mr. Lawson was involved in an automobile accident on December 1, 2013; he appears to relate a February 28, 2014 diagnosis  of a "prosthetic disc at L4-5 and mild to moderate bilateral foraminal stenosis secondary to facet degenerative changes" to his absences from work in late 2013 and early 2014.[5] Mr. Lawson was terminated on February 21, 2014.[6]

In his amended complaint, Mr. Lawson alleges claims for interference with FMLA rights, denial of FMLA leave, retaliation for FMLA leave, discrimination due to plaintiff's disability, failure to accommodate, retaliation and harassment purportedly based on his alleged disability. Plaintiff seeks a declaratory judgment that CertainTeed's acts violated plaintiff's rights under FMLA.

---

[1] 29 U.S.C. § 2601, *et seq.*
[2] R. #1, Complaint.
[3] Id. ¶ ¶ 12 and 13.
[4] Id., ¶ 21.
[5] R. #10, ¶ ¶ 104 and 107.
[6] R. #1, ¶ 57.

Plaintiff further seeks redress under Title of the Americans With Disabilities Act to correct unlawful practices, unfavorable treatment, failure to accommodate, and harassment which resulted in CertainTeed terminating plaintiff. Mr. Lawson seeks compensatory damages for economic loss, future loss, back pay, front pay, benefits and liquidated damages, an award for $1,000,000.00, costs and attorney's fees, and legal interest.

**RULE 12(B)(6) STANDARD**

Fed. R. Civ. P. 8(a)(2) requires that pleadings which state one or more claims for relief must contain "...a short and plain statement of the claim showing that the pleader is entitled to relief..."  This "notice pleading" requirement is balanced against Fed. R. Civ. P. 12(b)(6), which provides that a court may dismiss one or more claims when the pleader fails to state a claim upon which relief may be granted.

For the purpose of considering a motion to dismiss pursuant to Rule 12(b)(6), the court must take all well-pled factual allegations as true and must view them in the light most favorable to the plaintiff.[7]  The pleading must allege facts which, when taken as true, raise the pleader's claim for relief beyond the level of speculation or suspicion.[8]  Conclusions of law or recitations of necessary elements of a claim will not suffice.[9]

---

[7] In re Katrina Canal Breaches Litigation, 495 F.3d 191 (5th Cir. 2007) (internal citations omitted).
[8] Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).
[9] Papasan v. Allain, 478 U.S. 265 (1986).

The court's analysis is restricted to the pleading at issue, its proper attachment and matters of public record.[10]

## LAW AND ANALYSIS

CertainTeed's motion to dismiss is based on the following: (1) plaintiff's complaint fails to set forth sufficient facts to establish he has a disability within the meaning of the ADA, and (2) plaintiff's complaint fails to allege sufficient facts to state an ADA claim based on a failure to accommodate.

CertainTeed maintains that plaintiff has failed to allege sufficient facts to establish that he is disabled and thus qualified for protection under the Americans with Disabilities Act ("ADA"). To make out a *prima facie* case of discrimination under the ADA, plaintiff must show that (1) he has a disability; (2) he is a qualified individual for the job in question; and (3) an adverse employment decision was made because of his disability.[11] The threshold issue plaintiff must show is that he suffers a disability protected by the ADA.[12] The ADA confers a special meaning to the term "disability" as follows:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.[13]

---

[10] Financial Acquisition Partners LP v. Blackwell, 440 F.3d 278 (5th Cir. 2006) (internal citations omitted).
[11] See 42 U.S.C. § 12112(a).
[12] Rogers v. International Marine Terminals, Inc. 87 F.3d 755 758 (5th Cir. 1996).
[13] 42 U.S.C. § 12102(2).

The ADA does not define "substantially limits" nor does it define "major life activities." However, the regulations promulgated by the EEOC under the ADA provide significant guidance. To substantially limit means:

> (i)    unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii)    significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity.[14]

Major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.[15] Whether an impairment substantially limits a major life activity is determined in light of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact.[16]

Hence, Mr. Lawson must plead facts sufficient to raise a plausible inference that he has a physical or mental impairment that substantially limits one or more major life activities, that he could perform the essential functions of his job with or without an accommodation, and that CertainTeed was aware of his impairment, but failed to accommodate same or made an adverse employment decision because of his disability or his request for an accommodation.[17]

---

[14] 29 C.F.R. § 1630.2(j)(1)(i)(ii).

[15] The EEOC adopts this definition from the Rehabilitation Act. Bolton v. Scrivner, Inc., 36 F.3d 939 (10th Cir. 1994), cert. denied, 513 U.S. 1152, 115 S.Ct. 1104 (1995); 29 C.F.R. § 1630.2(i). This listing, however, is not intended to be exhaustive; other major life activities could include lifting, reaching, sitting, or standing. 29 C.F.R. § 1630, Appendix Part 1630—Interpretive Guidance on Title I of the Americans with Disabilities Act, § 1630.2(1)..

[16] 29 C.F.R. § 1630, App., 1630.2(j).

[17] Mercer v. Arbor E&T, 2012 WL 1425133 at *5-7 (S.D. Tex. Apr. 21, 2012) (citing Talk v. Delta Airlines, Inc. 165 F.3d 1021 1024 (5th Cir. 1999); Hale v. King, 642 F.3d 492, 500 (5th Cir. 2011).

CertainTeed asserts that Mr. Lawson has failed to plead facts in his first amended complaint that would reasonably infer that plaintiff was disabled, and that such is fatal to his claims under the ADA.  The court has reviewed the 26 page complaint, as amended. In his complaint, Plaintiff asserts that CertainTeed (1) failed to advise him of his rights under the FMLA, (2) failed to give him notice of their intentions regarding the granting or denying of FMLA status for his leave which prevented him from taking FMLA leave,[18] (3) improperly denied plaintiff's request for FMLA  leave,[19] (4) retaliated against plaintiff for filing his FMLA requests  by terminating his employment right after he filed his FMLA requests under the pretext that he had been repeatedly tardy or absent from work,[20] (5) violated plaintiff's rights under Title 1 of the Americans with Disabilities Act ("ADA") based on his alleged disability and CertainTeed's failure to provide appropriate relief by treating plaintiff unfavorably with respect to his employment regarding his opportunities for leave, including FMLA and vacation leave,[21] (6) caused unfavorable treatment and harassment which resulted in CertainTeed terminating plaintiff's employment, (7) failed to provide plaintiff a reasonable accommodation and terminated his employment on the basis of his disability,[22] (8) discriminated against plaintiff by failing to provide him with a reasonable accommodation required by his medically diagnosed "prosthetic disc at L4-5 and a mild to moderate bilateral foraminal stenosis secondary to facet degenerative

---

[18] First Amended Complaint, R. #10, ¶ 2.
[19] Id. ¶ 3.
[20] Id. ¶ 4.
[21] Id. ¶ ¶ 5 and 6.
[22] Id. ¶ 8.

changes",[23] (9) retaliated against plaintiff for engaging his ADA rights and discharged him because of his disability in violation of the ADA.[24]

The facts asserted by Mr. Lawson in his First Amended Complaint are as follows: CertainTeed hired Mr. Lawson on March 28, 2011. After his first year of employment, Mr. Lawson received a "3 Meets and sometimes exceeds" score with "Consistently Exceeds" in all required Managerial Competencies on his annual appraisal. Mr. Lawson received a 3% raise.[25]  After his second full year of employment, Mr. Lawson received a "4 Consistently exceeds" score with "Consistently Exceeds" in all required Managerial Competencies on his annual appraisal and he received a 5% raise.[26]

During his second and third quarter of employment in year 2013, plaintiff's son had numerous appointments for ADHD and Cerebral Palsy evaluations for which he was placed on medications.[27] In August 2013, Mr. Lawson's son was suspended from Kindergarten due to behavior; Mr. Lawson was required to attend a mandatory meeting with the Principal and other school staff on September 3, 2013.[28]

On September 30, 2013, Mr. Lawson received a Disciplinary Action Form for an unacceptable exchange with a fellow staff member.[29] On November 21, 2013, Mr. Lawson had to leave work to pick his son up from school due to an outburst; Mr. Lawson worked from home

---

[23] Id. ¶ 9.
[24] Id. ¶ 10.
[25] Id. ¶ 19.
[26] Id. ¶ 21.
[27] Id. ¶ 22.
[28] Id. ¶ 23.
[29] Id. ¶ 25.

the remainder of the day.[30] On November 22, 2013, Troy Fronzaglio asked Mr. Lawson to contact Ellen Curtis about FMLA leave. After e-mailing Ms. Curtis, she informed him to contact The Hartford and the Employee Assistance Program.[31] Plaintiff contacted the Employee Assistance Program on that same day, but alleges he received no help.[32] On that same day plaintiff also contacted The Hartford and started recording his leave under the FMLA.[33]

On November 25, 2013, Mr. Lawson underwent surgery for a hernia and was off work for three (3) weeks; he used one (1) week of vacation and was placed on FMLA leave for two (2) weeks. Mr. Lawson was also approved for short-term disability with The Hartford.[34]

On December 1, 2013, Mr. Lawson was involved in a wreck; he was taken to the emergency room where he received IV medications and a CT scan. Mr. Lawson immediately messaged Troy Fronzaglio regarding the incident.[35] Mr. Lawson was released to return to work on December 16, 2013.[36]

On December 20, 2013, Mr. Lawson took his son to a doctor's appointment which he filed with The Hartford.[37] On that same day he went to the HealthCare Express for a back evaluation and was given medication; Mr. Lawson filed the appointment with The Hartford.[38] Mr. Lawson went to the HealthCare Express again on January 3, 2014, and was given medication for his back;

---

[30] Id. ¶ 27.
[31] Id. ¶ 28.
[32] Id. ¶ 29.
[33] Id. ¶ 30.
[34] Id. ¶ 31.
[35] Id. ¶ 32.
[36] Id. ¶ 34.
[37] Id. ¶ 35.
[38] Id. ¶ 36.

the appointment was filed with The Hartford.[39] Mr. Lawson attended an appointment with HealthCare Express on January 10, 2014 for his back and was given medication; he filed this appointment with The Hartford.[40]

On January 15, 2014, Mr. Lawson had to leave work at lunch to pick his son up from school due to illness; Mr. Lawson took him to the doctor who diagnosed him with strep throat. The doctor gave Mr. Lawson an excuse for the remainder of that day up until January 17, 2014 which he filed with The Hartford.[41] On January 17, 2014, Mr. Lawson went to the HealthCare Express for his back and was given medication which he filed with The Hartford.[42]

On January 22, 2014 Mr. Lawson saw Dr. Merriman for a surgery follow-up which he filed with The Hartford.[43] On January 28, 2014, Mr. Lawson had to leave work around lunch time to pick up his son from school for behavioral problems and worked the remainder of the day from home. He filed this event with The Hartford.[44] On January 31, 2014, plaintiff went to the HealthCare Express for his back where he was given medication which he filed with The Hartford.[45]

On February 3, 2014, Mr. Lawson met with Ellen Curtis and Troy Fronzaglio about his questions from a January inquiry regarding the FMLA and vacation. Mr. Lawson was shown the January calendar and his absences from work. Ms. Curtis informed Mr. Lawson that The Hartford

---

[39] Id. ¶ 37.
[40] Id. ¶ 39.
[41] Id. ¶ 41.
[42] Id. ¶ 42.
[43] Id. ¶ 43. The complaint, as amended, does not mention what this surgery was for or how it might be related to this lawsuit or any other events alleged in the complaint.
[44] Id. ¶ 44.
[45] Id. ¶ 45.

had denied some of his FMLA requests – specifically for a dental appointment and the three (3) days he missed due to his son having strep throat. Ms. Curtis also informed plaintiff that she would set up an appointment with representatives of The Hartford to further explain to plaintiff about FMLA leave.[46]

On February 11, 2014, during an ice storm, Mr. Lawson contacted his employer that his son's school was closed; he was informed to come to work late or take a vacation day.[47] On February 14, 2014, plaintiff attempted to attend a doctor's appointment, but the doctor was not in so he rescheduled the appointment for February 18, 2014.  Mr. Lawson contacted The Hartford to inform them of the rescheduled appointment.[48] Mr. Lawson alleges that The Harford may have been confused about the appointments he filed and which event they were related towards— surgery follow-ups or the visits associated with the December car wreck. Mr. Lawson seems to allege there was also confusion with regard to Mr. Lawson missing work to pick up his son due to bad behavior and whether or not Mr. Lawson had provided the appropriate paperwork to The Hartford in order for it to be covered under the FMLA. Mr. Lawson infers that it was CertainTeed's HR Coordinator that should have taken an active role in educating him as to the requirement with regard to applying for FMLA with The Hartford.[49]

On February 14, 2014, Ellen Curtis and Danny Brandenburg met Mr. Lawson in his office and requested his company keys and informed him that he was under investigation.[50]

---

[46] Id. ¶ 46.
[47] Id. ¶ 50. The complaint does not allege if plaintiff ever went to work or took a vacation day.
[48] Id. ¶ 52.
[49] Id. ¶ 54.
[50] Id. ¶ 53.

On February 17, 2014, Mr. Lawson attempted to obtain the appropriate documentation for his son's doctor appointment at the Shriners and when he had to pick his son up for bad behavior; both of these events The Hartford showed as "outstanding."[51] On February 18, 2014, Mr. Lawson had an appointment with HealthCare Express to evaluate his back for which he received medication; he filed a claim with the Hartford.[52]

On February 20, 2014, Mr. Lawson met with Troy Fronzaglio, Ellen Curtis, Danny Brandenburg, and Cheryl Davidson wherein he was presented with a "Last Chance Agreement" and was further asked to sign the document. Mr. Lawson disagreed with some of the contents of the Agreement and refused to sign it. Mr. Lawson was informed that he had until the next morning to sign the document, as is, and return it; failure to do so would result in termination.[53] Mr. Lawson signed the Agreement but added comments stating his disagreement with the second paragraph and noting that he signed it under coercion and that he needed clarity as to various bullet points.[54]

On February 20, 2014, Mr. Fronzaglio and Mr. Lawson spoke over the phone and he was provided the clarity he requested.  Mr. Fronzaglio also informed Mr. Lawson that he could not add comments to the Agreement and offered him the opportunity to sign and resubmit the Agreement no later than February 21, 2014.[55] Mr. Lawson informed Mr. Fronzaglio that he would not sign the agreement. On February 21, 2014, Mr. Lawson informed Mr. Fronzaglio by email that

---

[51] The court does not know what "outstanding" means but will infer that The Hartford had not denied the request for leave, nor had it granted the request for leave.
[52] Id. ¶ 57.
[53] Id. ¶ 60.
[54] Id. ¶ 61.
[55] Id. ¶ 62.

he could not sign the agreement—as is—and he further requested Ellen Curtis to call him pertaining to his final date of work, unpaid leave, severance and bonus and requested that CertainTeed ship his personal belongings to him.

Thereafter, Mr. Lawson spoke with Mr. Fronzaglio who informed him that CertainTeed accepted his voluntary resignation.

On February 28, 2014, Mr. Lawson received MRI results revealing "L4-5 level shows prosthetic disc with no bulging disc, but there is mild to moderate bilateral foranminal stenosis secondary to facet degenerative changes."[56] On March 24, 2014, Mr. Lawson began working for American Screening Corporation where he was employed for about one month. Mr. Lawson voluntarily resigned due to excessive back pain.[57]

Mr. Lawson claims that CertainTeed interfered with his FMLA rights due to his son's illnesses, his back, the hernia surgery and the car accident injuries.[58] Mr. Lawson complains that even up until the day of his resignation, CertainTeed failed to inform him of its intentions with regard to the status of all of his FMLA leave and failed to inform him of his rights under the FMLA.[59] Mr. Lawson further asserts that CertainTeed improperly denied him of FMLA leave requests.[60] He also asserts that CertainTeed terminated him because of his FMLA approved absences from work and that at the time of his termination, The Hartford had not denied any of his requests for leave under the FMLA.[61] Mr. Lawson asserts that CertainTeed discriminated

---

[56] Id. ¶ 69.
[57] Id. ¶ ¶ 72 and 75.
[58] Id. ¶ 80.
[59] Id. ¶ ¶ 82 and 83.
[60] Id. ¶ 90.
[61]  Id. ¶ 95 and 97.

against him on the basis of his disability. He alleges that his disability is due to the prosthetic disc at L4-5.[62] Specifically, Mr. Lawson alleges that CertainTeed treated him unfavorably as to his FMLA leave and vacation which resulted in CertainTeed terminating his employment.[63] Mr. Lawson complains that CertainTeed failed to provide him reasonable accommodation namely (1) that CertainTeed stop placing unwarranted stress on him with harassing, disparate treatment regarding his leave requests, and (2) that CertainTeed make the FMLA process work properly.[64] Mr. Lawson alleges that he made repeated requests to "fix" the FMLA process.[65] Mr. Lawson relies on a conversation he had with a Hartford representative when that representative indicated that Mr. Lawson had to present certain documents with his FMLA requests and  sai representative further inquired as to why the CertainTeed HR coordinator had not taken a more active role in educating Mr. Lawson with his submission requests.[66] Mr. Lawson asserts that Mr. Fraonzaglio and Ms. Curtis were both aware of the broken condition of the plant's leave management process.

There are no facts pled in his complaint, as amended, that even remotely suggest that Mr. Lawson has a disability within the meaning of the ADA. Moreover, there are no facts that would establish that Mr. Lawson has a physical or mental impairment that substantially limits one or more major life activities.  Mr. Lawson seems to rely on several visits to HealthCare Express where he was given medications after a back evaluation and a diagnosis of a prosthetic disc.  However, there are no facts that show the nature and severity of Mr. Lawson's back condition, the duration

---

[62] Id. ¶ 104.
[63] Id. ¶ ¶ 105 and 106.
[64] Id. ¶ ¶ 117 and 118.
[65] Id. ¶ 122.
[66] Id. ¶ 124.

or expected duration, or its permanent or expected permanent or long-term impact. Thus, even taking all facts pled as true, there are no facts pled to establish that Mr. Lawson was disabled under the ADA. To the contrary, the facts pled by Mr. Lawson reveal that he was and continued to be able to perform not only the essential functions of his job without an accommodation, but also to take care of himself as well as his son and the problems associated  with his son's medical and/or mental and physical needs.   Accordingly, all claims asserted under the ADA will be dismissed.

## CONCLUSION

For the reasons set forth above, the motion for partial dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure will be granted dismissing with prejudice plaintiff's claim under the Americans with Disabilities Act. The motion for oral argument will be denied as unnecessary. The Court determines that there is no just reason for delay and will direct entry of final judgment under rule 54(b) of the Federal Rules of Civil Procedure.

**THUS DONE AND SIGNED** in Alexandria, Louisiana on this 4th day of January, 2017.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE