U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

APR 2 4 2017

TONY R. MOORE, CLERK
BY: _____ MB
      DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| BRIAN JAMES LAWSON | CIVIL ACTION NO. 1:16-0238 |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| CERTAINTEED CORP., ET AL | MAG. JUDGE PEREZ-MONTES |

## MEMORANDUM RULING

Before the court is "Defendants' Motion for Summary Judgment" (R. #25) filed by CertainTeed Corporation, Troy Fronzaglio, and Ellen Curtis (hereinafter "Defendants") wherein the movers seek dismissal of Plaintiff's First Amended Complaint in its entirety. Specifically, Defendants seek to dismiss Plaintiff's retaliation claims for wrongful termination under the Family and Medical Leave Act ("FMLA"),[1] because Plaintiff voluntarily resigned his employment, or alternatively, was discharged for legitimate, nondiscriminatory, non-retaliatory reasons unrelated to his FMLA leave. Defendants further seek dismissal of Plaintiff's claims of interference with the FMLA because Plaintiff received all of the FMLA leave he requested without a loss of pay or benefits.

## FACTUAL STATEMENT

Plaintiff, Brian Lawson, was hired by CertainTeed as a Quality Manager at its Shreveport plant in March 2011.[2] In February 2014, after a conference with his supervisors which required Mr. Lawson to sign an agreement to improve his disruptive, unprofessional, and insubordinate

---

[1] 29 U.S.C. § 2601, et seq.
[2] Defendants' exhibit A, Brian Lawson depo. p. 238.

1

behavior at work and his non-FMLA covered absences, Mr. Lawson resigned. Mr. Lawson filed the instant lawsuit asserting various claims, some of which were previously dismissed[3]; the remaining claims are for retaliation and interference of Plaintiff's rights pursuant to the FMLA.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[4] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[5] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[6] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[7] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[8] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[9] There is no genuine issue of material fact if, viewing the evidence in the light more favorable to the non-moving party,

---

[3] See R. #17 and 18.
[4] Fed. R. Civ. P. 56(c).
[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
[6] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).
[7] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).
[8] Anderson, 477 U.S. at 249.
[9] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

2

no reasonable trier of fact could find for the non-moving party.[10] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.[11] The court will construe all evidence in the light most favorable to the nonmoving party, but will not infer the existence of evidence not presented.[12]

## LAW AND ANALYSIS

In this lawsuit, Mr. Lawson claims that CertainTeed (1) terminated him in violation of the FMLA, (2) failed to provide him notice of his rights under the FMLA, (3) violated his rights with respect to decisions made on Plaintiff's FMLA requests, (4) failed to request medical certifications, and (5) improperly denied Plaintiff's FMLA leave requests.

The FMLA prohibits employers "from interfering with, restraining, or denying the exercise" of their employees' right to take FMLA leave.[13] 29 U.S.C. § 2615(a) of the FMLA, titled "Interference with rights" provides as follows:

> (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
>
> (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

---

[10] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
[11] Anderson, 477 U.S. at 249-50.
[12] Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).
[13] This leave consists of up to 12 weeks of medical leave for the employee's serious medical condition or care of a family member with a serious medical condition. Lanier v. University of Texas Southwestern Medical Center, 527 Fed. Appx. 312, 316 (5th Cir. 2013).

3

Interference claims do not require a showing of discriminatory intent, whereas retaliation claims do.[14]

*Wrongful termination/retaliation*

Mr. Lawson asserts his termination was retaliation for asserting his FMLA rights. CertainTeed maintains that it did not terminate Mr. Lawson; he voluntarily resigned. CertainTeed further maintains that to the extent Mr. Lawson could prove his voluntary resignation was an adverse employment action, such action is not an interference with Plaintiff's FMLA rights, nor does it have a causal connection to Mr. Lawson's FMLA leave. CertainTeed further contends that any adverse employment action was taken for legitimate, nondiscriminatory, non-retaliatory reasons, namely Mr. Lawson's refusal to agree to the Last Chance Agreement, his refusal to acknowledge and agree to improve his disruptive, unprofessional, and insubordinate behavior, as well as his excessive non-FMLA covered absences from work. CertainTeed also maintains that Mr. Lawson can present no genuine issue of material fact for trial to prove that its legitimate reasons were a pretext for discrimination.

CertainTeed insists that Mr. Lawson voluntarily resigned. On February 21, 2014, CertainTeed and Mr. Lawson had a meeting to discuss his disruptive, unprofessional, and insubordinate behavior, as well as his continued issues with non-FMLA absenteeism. CertainTeed presented Mr. Lawson with a "Last Chance Agreement" (the "Agreement") to resolve the issues. Mr. Lawson signed the Agreement but objected by writing on it that he did "NOT concur with the second paragraph of [the] document which contained a description of Plaintiff's disruptive,

---

[14] Crain v. Schlumberger Tech.Co., 2017 WL 71673, at *2 (E.D. La. Feb. 23, 2017) see also Kendall v. Walgreen Co., 2014 WL 1513960, at *4 (W.D. Tex. Apr. 16, 2014).

unprofessional, and insubordinate behavior which led to his suspension and the issuance of the Agreement.[15] CertainTeed determined that because of Mr. Lawson's objection, his signature on the Agreement did not reflect a meaningful intent to comply with the guidelines set forth in the document reasoning that if Plaintiff could not acknowledge his shortcomings, he could not possibly correct them.[16] Ultimately, CertainTeed concluded that Mr. Lawson rejected the Agreement, and it accepted his voluntary resignation from employment effective February 21, 2014.[17] CertainTeed also relies on statements from three different people that Mr. Lawson informed them that he was resigning along with job search efforts Mr. Lawson made prior to the February 21 resignation.[18]

Mr. Lawson has failed to provide this court with any facts to dispute the foregoing recitation of facts; he only argues that the resignation was involuntary. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."[19] Where a party opposing a motion for summary judgment does not file a statement of contested material facts supported by citation to specific evidence in the record, the moving party's statement of uncontested

---

[15] Statement of Material Fact ¶ 54; Defendants' exhibit B, Fronzaglio Decl. ¶ 18; Defendants' exhibit C, Curtis Decl. ¶ 14.
[16] Id. ¶ 55; Defendants' exhibit A, Lawson depo. pp. 166-67, 339.
[17] Id. ¶ 56; Id., Lawson depo. p. 382.
[18] Id. ¶ ¶ 37-38, 49; Defendants' exhibit C and D; Exhibit 2 to Curtis decl. and Davidson Decl.; Defendants' exhibit A, Lawson depo. pp. 291-92.
[19] Mathis v. E.I. Dupont de Nemours & Co., 2008 WL 162156, at *1 (W.D. La. Jan. 16, 2008).

5

material facts is deemed admitted for purposes of the motion.[20] Accordingly, the court finds that Plaintiff's resignation was voluntary.

However, the court will consider Mr. Lawson's resignation as involuntary and further determine if the resignation was considered an adverse employment action, and if said action interfered with Mr. Lawson's FMLA rights, or was in retaliation for Mr. Lawson asserting his FMLA rights.

To establish that CertainTeed interfered with his FMLA rights, Mr. Lawson must prove that CertainTeed denied a benefit to which he was entitled under the FMLA.[21] Mr. Lawson admitted in his deposition that he was granted all of the FMLA leave he requested and none of his FMLA leave requests were denied during his employment with CertainTeed.[22] Thus, Mr. Lawson cannot establish that his separation from employment resulted in a denial of benefits he was entitled to under the FMLA, nor can he establish that CertainTeed interfered with his FMLA rights during his employment.

Mr. Lawson also claims his employment was involuntarily terminated in retaliation for taking FMLA leave. To establish a *prima facie* case of FMLA retaliation, Mr. Lawson must establish that: (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action.[23] If

---

[20] Atkinson v. Dolgencorp Inc., 2006 WL 2620078, at *1 (W.D> Sept 12, 2006), aff'd 223 Fed. Appx. 328 (5th Cir. 2007)(Defendants' uncontested facts were not controverted by Plaintiffs as required by Local Rule 56.2 by citation to specific evidence in the summary judgment record are deemed admitted for purposes of the motion.)
[21] 29 U.S.C. § 2614(b)(1); Garner v. Chevron Phillips Chemical Co., L.P., 834 F.Supp.2d 528, 562 (S.D. tex. 2011)(citing Ford-Evans v. United Space Alliance LLC, 329 Fed. Appx. 519, 523 (5th Cir. 2009)); Anderson v. New Orleans Jazz & Heritage Festival and Found., Inc. 464 F.Supp.2d 562, 567 (E.D. La. 2006).
[22] Defendants' exhibit A, Lawson depo. pp. 120, 133.
[23] McKenna v. Liberty Mut. Group, Inc., 468 Fed. Appx. 413, 416 (5th Cir. 2012).

he makes this showing, the burden shifts to CertainTeed to articulate a legitimate, non-retaliatory reason for the employment action.[24] If CertainTeed articulates such a reason, "the burden shifts back to Plaintiff to show 'by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination.'"[25]

Plaintiff does not allege that he opposed any practice prohibited by the FMLA, or that CertainTeed took any action because of any practice he opposed that was prohibited by the FMLA. Mr. Lawson has further failed to establish a *prima facie* case of retaliation. Not only has he failed to show that he engaged in a protected activity, but he has also failed to establish a causal connection between an alleged protected activity and the adverse employment action. Even if Mr. Lawson could establish a *prima facie* case of retaliation, CertainTeed has articulated a legitimate, non-discriminatory, not-retaliatory reason for his alleged termination from employment.

The summary judgment evidence submitted by CertainTeed establishes the following:

- Mr. Lawson was approved for intermittent FMLA leave in 2014; he took for six (6) days between January 1 and February 21, 2014.[26]

- Mr. Lawson missed four (4) other days of work during this timeframe which was non-FMLA absences.[27]

- On January 17, 2014, CertainTeed learned that Mr. Lawson had a habit of not being at work when the Plant Manager, Troy Fronzaglio was not present at the plant.[28]

---

[24] Id.
[25] Id.
[26] SMF, ¶ 24-26, 29-32; Defendants' exhibit A, Lawson depo. pp. 188-89,191, 193-194, 206-207, exhibits 6,7, 8 attached thereto; Defendants' exhibit A Lawson depo. pp. 120, 121,218,219,220-02, 226-27, 229, exhibits 13 and 15 attached thereto.
[27] Id.
[28] SMF ¶ 33; Defendants' exhibit C, Curtis Decl.; Defendants' exhibit D, Davidson Decl.

- On February 3, 2014, Fronzaglio and Curtis met with Mr. Lawson to discuss his 2014 attendance, in particular the non-FMLA absences.[29]

- In early December 2011, Mr. Lawson exhibited through an e-mail to a co-worker, aggressive, and condescending behavior.[30]

- In early June 2013, due to more inappropriate e-mails, Mr. Lawson was counseled to avoid argumentative and abrasive tones in e-mails to co-workers.[31]

- On June 4, 2013, Mr. Lawson sent an e-mail to Mr. Fronzaglio, Human Resources Coordinator Ellen Curtis, Production Manager/Superintendent, Daniel Brandenburg and other co-workers explaining his personality type and how his co-workers could adapt to his strengths and weaknesses.[32]

- On June 19, 2013, Mr. Lawson emailed Mr. Brandenburg accusing him of making "asinine requests," and stating that "If you become plant manager, you may feel free to do so with the next Quality Manager."[33]

- On June 20, 2013, Fronzaglio and Ms. Curtis met with Mr. Lawson to discuss this overall aggressive behavior and the need to maintain a positive and professional attitude at work.[34]

- In late July 2013, Mr. Fronzaglio met with Mr. Lawson to discuss his performance and the need to build a positive team environment.

---

[29] SMF ¶ 34; Defendants' exhibit B, Fronzaglio Decl, ¶ 9; Defendants' exhibits C and D, exhibit 5 attached to Curtis Decl. and Davidson Decl.
[30] SMF ¶ 6; Defendants' exhibit A, Lawson depo. pp. 271-73, exhibit 23 attached thereto.
[31] SMF ¶ 8; Defendants' exhibit B, Fronzaglio Decl. ¶ 4.
[32] SMF ¶ 9; Defendants' exhibit A, Lawson depo. pp. 66, 270-71, exhibit 21 attached thereto.
[33] SMG ¶ 10; Defendants' exhibit A, Lawson depo. pp. 261-262, exhibit 22 attached thereto.
[34] SMF ¶ 12; Defendants' exhibit A, Lawson depo pp. 248-50, exhibit 20 attached thereto; Defendants' exhibit C, Curtis Decl., attached as exhibit C, ¶ 3; Defendants' exhibit D, Davidson Decl., exhibit D attached thereto, ¶ 3.

- On September 30, 2013, Mr. Lawson got into a physical altercation with co-worker, Andy Calloway, in which Mr. Lawson admitted pushing Mr. Calloway into the wall.[35] Mr. Lawson received a disciplinary action for this incident.[36]

- On October 11, 2013, Mr. Fronzaglio met with Mr. Lawson to discuss his job performance and expectations for Plaintiff's communication and collaboration with others in the plant; during this conversation, Mr. Lawson stated that he could "paint a picture of rainbows and unicorns when rainbows and unicorns don't truly exist," or he could "provide the cold, hard fact" with minimal tact.[37]

- On or about October 14, 2013, Mr. Lawson completed additional training on team building, being an effective team member, and effective team communication.

- On or about January 14, 2014, Mr. Fronzaglio announced he would be transferring to a different facility and that Mr. Brandenburg would be replacing him on an interim basis.[38]

- On January 15, 2014, Mr. Lawson requested letter of recommendation from Mr. Fronzaglio, Lou Terrenzio and Clem Benavente.[39]

- On January 15, 2014, Mr. Alger reported that on that same day, Mr. Lawson told him "well, take this as my official resignation," further stating that he would not work under Brandenburg.[40]

- On January 22, 2014, Mr. Lawson told William Robinson that "there was no f....g way in hell" he would work under Brandenburg.[41]

- On February 11, 2014, Mr. Lawson texted Brandenburg that his child's school and daycare would be closed due to winter weather and the he might need to work from home.

---

[35] SMF ¶ 14; Defendants' exhibit A, Lawson depo. pp. 84-87.
[36] SMF ¶ 15; Defendants' exhibit A, Lawson depo. pp. 276-77. Exhibit 25 attached thereto.
[37] SMF ¶ 17; Defendants' exhibit B, Fronzaglio Decl. ¶ 7; Defendants' exhibit A, Lawson depo. pp. 156-57.
[38] SMF ¶ 35; Defendants' exhibit B, Fronzaglio Decl., ¶ 10..
[39] SMF ¶ 36; Defendants' exhibit A, Lawson depo. pp. 290-91; Defendants' exhibit C, Curtis Decl. Defendants' exhibit D, Davidson Decl, exhibit 5 attached thereto.
[40] SMF ¶ 37; Defendants' exhibit C, Curtis Decl.; Defendants' exhibit D, Davidson Decl.; Defendants' exhibit A, Lawson depo. pp. 291-92.
[41] SMF ¶ 38; Defendants' exhibit A, Lawson depo. pp. 292-96, exhibit 29 attached thereto; Defendants' exhibit C, Curtis Decl.; Defendants' exhibit D, Davidson Decl., exhibit 3 attached thereto.

Brandenburg responded that production would be starting late, and if the roads were bad, he could come in late or take a vacation day to which Plaintiff responded "K."[42]

- On February 12, 2014, Mr. Lawson sent the following text to Mr. Brandenburg:
  > For the record, I'm at work AND on time. Can I assume—for the sake of employee treatment—that you will be providing direct oversight to ensure all employees who cannot make it to work today due to the weather and against La. State police recommendations submit for a vacation day?[43]

- On February 12, 2014, Mr. Lawson sent the following text to Mr. Fronzaglio:
  > Just for the record. I'm at work AND on time as I was informed to be at work or take a day of vacation. I sure hope such requirements don't injure—or worse—kill one of our employees this morning. State Police said stay off the roads.[44]

- On February 12, 2014, Mr. Lawson exhibited disruptive behavior at work by singing along to loud music in his office and mimicking playing the drums on his desk.[45]

- Additionally, Mr. Lawson posted on his door a picture of a unicorn on a rainbow and the words "Simply Astonished."[46]

- On February 13, 2014, Mr. Lawson conducted a Quality Department meeting in which he stated "if we here in Shreveport did not make the company money that we would see how much the VMVO[47] actually means to our company," and that "the VMVO means nothing unless we make money."[48]

- On February 13, 2014, after an investigation by Ms. Curtis of Mr. Lawson's conduct of February 11, 12, and 13, Mr. Fronzaglio and Davidson decided Mr. Lawson should be

---

[42] SMF ¶ 39; .Defendants' exhibit A, Lawson depo. p. 288-300, exhibit 30 attached thereto; Defendants' exhibit B Fronzaglio Decl., ¶ ¶ 11-12, exhibit 2 attached thereto; Defendants' exhibit C, Curtis Decl.; Defendants' exhibit D, Davidson Decl., exhibit 4 attached thereto.
[43] SMF ¶ 40; Defendants' exhibit D; Davidson Decl., ¶ 3, exhibit 4 attached thereto.
[44] SMF ¶ 41; Defendants' exhibit B, Fronzaglio Decl., ¶ 11, exhibit 11 attached thereto; Defendants' exhibit A, Lawson depo. pp. 298-300, exhibit 30 attached thereto.
[45] SMF ¶ 42; Defendants' exhibit A; Lawson depo. pp. 307-10, exhibit 33 attached thereto; Defendants' exhibit C, Curtis Decl; Defendants' exhibit D, Davidson Decl., exhibit 4 attached thereto.
[46] SMF ¶ 43; Defendants' exhibit A; Lawson depo. pp. 304-05, exhibit 32 attached thereto.
[47] VMVO means Vision, Mission, Values and Objectives for employees to adhere to. SMF ¶ 46; Defendants' exhibit B, Fronzaglio Decl., ¶ 14.
[48] SMF ¶ 45; Defendants' exhibit A, Lawson depo. pp. 139-40.

disciplined because of his behavior and after finding out about his comments in the February 13, 2014 Quality Meeting, it was decided that he should be suspended pending further review of his conduct.[49]

- On February 14, 2014, Mr. Lawson was suspended pending further investigation.[50]

- On February 15, 2014, Mr. Lawson began searching for other employment; he sent an e-mail to his former colleague, Lou Terrenzio, stating "[e]ven if ]CertainTeed is] simply attempting to rattle my cage, to get me to shut up and color, alas, the damage is done, as I can no longer work for CertainTeed."[51]

After these events, CertainTeed decided to present Mr. Lawson the "Last Chance Agreement" in order for him to continue working for CertainTeed; the Agreement required Mr. Lawson to agree to support Mr. Brandenburg as operations manager and the Company's VMVO, build positive team relationships, engage in positive and professional communications, attend mandatory counseling for aggressive behavior through the company's employee assistance program, and commit to improve his absenteeism and make appropriate arrangements for childcare.[52] During the meeting in which the Agreement was presented, Mr. Lawson was informed that he needed to improve his non-FMLA absenteeism. On either February 20 or 21, Mr. Fronzaglio informed Mr. Lawson that the company would work with him to determine which of his absences was covered by the FMLA and which ones would not be covered.[53]

The court finds that Mr. Lawson has failed to create a genuine issue of material fact for trial as to his separation from employment; there is absolutely no evidence in the

---

[49] SMF ¶ 47; Defendants' exhibit B, Franzaglio Decl., ¶ 14.
[50] SMF ¶ 48; Defendants' exhibit A, Lawson depo. pp. 139-40.
[51] SMF ¶ 49;Defendants' exhibit A, Lawson depo. pp. 316-17, 320, exhibit 37 attached thereto.
[52] SMF ¶ 51; Defendants' exhibit A, Lawson depo. pp. 324-25, 329-30, exhibit 38 attached thereto.
[53] SMF ¶ 52 and 53: Defendants' exhibit A, Lawson depo. pp. 221-22, 225, exhibit 14 attached thereto; Defendants' exhibit B, Franzaglio Decl, ¶ 17; Defendants' exhibit A, Lawson depo. p. 334, exhibit 40 attached thereto.

record to establish that Mr. Lawson's separation from employment was related to his rights under the FMLA. As noted by Defendants, Mr. Lawson's behavioral problems began at least eight (8) months prior to his separation. There is no evidence that he was denied any requests for leave, nor is there evidence in the record that his resignation, whether voluntarily or involuntary, was to retaliate against him for taking FMLA leave. The only evidence that would even hint to issues with Mr. Lawson's absenteeism clearly related to his non-FMLA leave. Furthermore, even if Mr. Lawson could establish a *prima facie* case, Defendants have submitted sufficient undisputed summary judgment evidence to prove that they had legitimate reasons for Mr. Lawson's separation from employment. Finally, Mr. Lawson has failed to submit summary judgment evidence to create a genuine issue of material fact for trial that Defendants' reasons for Mr. Lawson's separation from employment, are a pretext for discrimination.

*Denial of leave, failure to notice and failure to request medical certifications*

Mr. Lawson alleges that Defendants interfered with his FMLA rights by (1) failing to advise him of his FMLA rights; (2) failing to provide notice of the decisions to grant and/or deny his leave requests; (3) improperly denying his leave requests; and (4) failing to request an FMLA certification.

CertainTeed asserts that Mr. Lawson's claims based on alleged notice and designations issues fail as a matter of law because in his deposition Mr. Lawson admitted that not only was he not denied any FMLA leave, he did not lose any benefits as a result of taking FMLA leave.

To succeed in a claim for interference of FMLA rights, Mr. Lawson must establish that Certain Teed interfered with, restrained or denied his exercise of FMLA rights.[54] Mr. Lawson must also show that he was prejudiced by such violation.[55]

> Even if a reasonable jury could find that an employer interfered, restrained, or denied the exercise of FMLA rights, the employee still must point to evidence of prejudice in order to recover. Prejudice exists when an employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, such as the cost of providing care, or suffers some loss in employment status such that equitable relief is appropriate.[56]

Mr. Lawson testified that none of his FMLA leave requests were denied during his employment.[57] Mr. Lawson received physician certification forms and had his doctors complete and return some of the forms to Hartford.[58] It is undisputed that The Hartford denied some requests only because Mr. Lawson failed to return the certification forms.[59] As for Mr. Lawson's interference claims for inadequate notice of his FMLA rights and/or the company's decisions regarding his FMLA leave requests, Mr. Lawson has not established any prejudice. Again, Mr. Lawson testified that none of his FMLA leave requests were denied during his employment. Thus, Mr. Lawson cannot prove that Defendants interfered with his FMLA rights and Defendants are entitled to judgment as a matter of law on these claims.

---

[54] Bernard v. EDS Noland Episcopal Day Sch., 62 F.Wupp.3d 535, 544 (W.D. La. 2014) (quoting Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 122 S.Ct. 1155, (2002)).
[55] Id.
[56] Jones v. Children's Hosp., 58 F.Supp.3d 656, 668-69 (E.D. La. 2014)(citing Ragsdale, 535 U.S. at 82, 122 S.Ct. 155; 29 U.S.C. § 2617(a)(1)).
[57] SMF ¶ 28; Defendants' exhibit A, Lawson depo. p. 130.
[58] SMF ¶ 22, 29; Defendants' exhibit A, Lawson depo., pp. 109-11, 185-86, 187-188,ehxibit 5 attached thereto; Defendant's exhibit A, Lawson depo., pp. 218, 226-27, exhibits 13 and 15 attached thereto.
[59] SMF ¶ 57; Defendants' exhibit A, Lawson depo., pp. 130-313.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment will be granted in its entirety dismissing with prejudice Plaintiff's claims against Defendants, CertainTeed Corporation, Troy Fronzaglio and Ellen Curtis at Plaintiff's sole cost.

**THUS DONE AND SIGNED** in Alexandria, Louisiana on this 24th day of April, 2017.

JAMES T. TRIMBLE, JR.
**UNITED STATES DISTRICT COURT**